IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

LESLY GATHERIGHT                                                              PLAINTIFF

v.                                              CIVIL ACTION NO. 3:16-cv-00003-GHD-RP

HALEY BARBOUR, JIM HOOD,
BEN CREEKMORE, LON STALLINGS,
HONEY USSERY, MICKEY MALLETTE,
CALHOUN COUNTY MISSISSIPPI'S
SHERIFF'S OFFICE, DEWAYNE
WINTER, and TRACY McGUIRT                                                    DEFENDANTS

**MEMORANDUM OPINION GRANTING COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Presently before the Court in this matter brought by *pro se* Plaintiff Lesly Gatheright

("Plaintiff") is a motion for summary judgment [28 & 30] jointly filed by Defendants Calhoun

County Sheriff's Department,[1] Dewayne Winter, and Tracy McGuirt (collectively, the "County

Defendants").[2] Upon due consideration, the Court finds that the motion should be granted and

the claims dismissed against the County Defendants, for the reasons stated below.

### I.   *Factual and Procedural Background*

On January 5, 2016, Plaintiff, proceeding *pro se*, initiated this action against Defendants

Haley Barbour, Jim Hood, Ben Creekmore, Lon Stallings, Honey Ussery, Mickey Mallette, the

Calhoun County Sheriff's Department, Dewayne Winter, and Tracy McGuirt.  The case *sub*

*judice* is related to an earlier case filed by Plaintiff on November 28, 2012 styled *Lesly*

---

[1] Plaintiff brings this case against "Calhoun County, Mississippi Sheriff's Office," but the entity's correct name is apparently "Calhoun County Sheriff's Department." Therefore, throughout this opinion, the Court will refer to that defendant as the Calhoun County Sheriff's Department.

[2] Although the County Defendants style their motion as a motion for summary judgment and state in the accompanying memorandum brief that the motion is filed pursuant to Rule 56 of the Federal Rules of Civil Procedure, in the body of the actual motion, the County Defendants state that they are filing their motion pursuant to Rule 12(b)(1) and/or Rule 12(b)(6) of the Federal Rules of Civil Procedure. Despite this discrepancy, due to the substance of the motion and the attached documentation, the Court is satisfied that the motion is one for summary judgment. Thus, the motion shall be construed as such.

*Gatheright v. Norman Clark et al.*, 3:12-cv-001111-SA-SAA, which was dismissed on summary judgment grounds on March 31, 2016.[3]

Plaintiff alleges that "[o]n or about August 27, 2007, [he] purchased a load of sweet potatoes from Mr. [Norman] Clark" and on the same date left a check post-dated for September 11, 2007 in payment in the amount of $8,280. *See* Pl.'s Compl. [1] ¶ 7. Plaintiff further alleges that the August shipment of sweet potatoes was rejected by one of Plaintiff's customers "because the sweet potatoes were unwholesome and decaying." *Id.* ¶ 9. Plaintiff avers that "on or about April 28, 2008, despite the fact that under Mississippi law the issuance of a post-dated check that is later returned for insufficient funds is not a prosecutable offense," Mr. Clark and the Defendants in the case *sub judice*, "acted together within their respective official capacities . . . to maliciously[,] invidiously[,] intentionally[,] and without just cause, initiate a criminal action against Plaintiff under Miss[issippi] Code Ann[otated] § 97-19-55, by aiding and guiding Mr. Clark to swear to a false Bad Check Affidavit in the Justice Court of Calhoun County, Mississippi . . . ." *Id.* ¶ 10.[4]

Plaintiff alleges that while he was in Chicago, Illinois for business purposes he was arrested on a Governor's Warrant from the State of Mississippi, and was incarcerated without bond in Chicago for approximately six weeks "for the false and malicious charge that Mr. Clark brought against Plaintiff" with the help of the Defendants in this case. *Id.* ¶ 12. Plaintiff

---

[3] In that case, Chief United States District Court Judge Sharion Aycock denied Plaintiff's motion to amend his complaint and join nineteen additional defendants, including the following defendants in the case *sub judice*: Haley Barbour, Lon Stallings, Jim Hood, Honey Ussery, the Calhoun County Sheriff's Department, and Dewayne Winter.

[4] In the Bad Check Affidavit, which Plaintiff attaches to his complaint, Mr. Clark swore that Plaintiff "willfully and unlawfully and feloniously, with intent to defraud[,]" issued a delivered a check unto NAC Farms, Inc. on September 11, 2007 in the amount of $8,280 for sweet potatoes, when Plaintiff had insufficient funds in his bank account. See Bad Check Aff. [1-1] at 1. However, Plaintiff alleges that this information was false, as the post-dated check was issued and delivered on August 27, 2007—prior to the date listed on the check of September 11, 2007.

maintains that during his incarceration he experienced "physical illness, extreme hypertension, and mental anguish" and that he "lost his liberty, livelihood[,] and ability to work and earn a living" and "suffered great embarrassment and loss of reputation." *Id.* ¶ 13. Plaintiff further maintains that he "lost approximately $100,000 worth of his business's inventory, which was either stolen, destroyed, or otherwise taken from Plaintiff" during his incarceration. *Id.* Plaintiff avers that he had "to employ legal counsel in Illinois to guide him through the extradition process." *Id.* ¶ 14. He further avers that he was transferred to be incarcerated in Mississippi with bond and was able to post bond after spending five days in jail. Plaintiff alleges that he was indicted on or about May 14, 2009 on two counts of False Pretenses in violation of Mississippi Code Annotated §§ 97-19-55 and 97-19-67 in the Circuit Court of Calhoun County, Mississippi, apparently one count for each of two checks that were post-dated to Mr. Clark for sweet potatoes. Count I was dismissed in November of 2011 in Plaintiff's favor, as indicated in the Circuit Court of Calhoun County's Order of Dismissal [1-8]. Count 2 was later dismissed on January 6, 2015, as indicated in the Circuit Court of Calhoun County's Order granting the motion to dismiss [1-9].

On March 8, 2016, motions to dismiss were filed by Defendant Barbour [14 & 16]; Defendant Hood [18 & 20]; and Defendants Creekmore, Mallette, Stallings, and Ussery, collectively [22 & 24]. Because the motions to dismiss asserted various forms of immunity, the Court stayed the case except for additional immunity motion practice. Plaintiff did not file a response in opposition to the motions to dismiss. In a Superseding Order [44] and memorandum opinion [45] dated February 6, 2017, the Court granted the motions to dismiss and dismissed all claims against Defendants Barbour, Hood, Creekmore, Mallette, Stallings, and Ussery on Rule 12(b)(1) and (b)(6) grounds.

On August 19, 2016, the County Defendants filed the present motion for summary judgment [28 & 30] concerning the claims asserted against them in Plaintiff's complaint. The County Defendants contend in their motion for summary judgment [28 & 30] that the claims against them are barred by multiple immunity provisions and expiration of the statute of limitations. The County Defendants further contend that several claims asserted against them fail on their merits.

On August 29, 2016, Plaintiff filed a motion for clarification [31] as to why the County Defendants were able to file their motion for summary judgment [28 & 30] after the Court stayed the case. The Magistrate Judge entered an Order [32] explaining that the motion for summary judgment asserted various forms of immunity for the County Defendants. Thus, because the motion for summary judgment was "additional immunity motion practice," it was permitted by the stay. The Magistrate Judge instructed Plaintiff to file his response to the motion for summary judgment by September 14, 2016. Plaintiff filed his response to the motion for summary judgment on September 29, 2016, fifteen days past the deadline for doing so. The County Defendants then filed a reply; and Plaintiff filed a sur-rebuttal, without leave of the Court to do so. These matters are now ripe for review.

## II. *Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* Fed. R. Civ. P. 56(a); *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 561 (5th Cir. 2013). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* at 323, 106 S. Ct. 2548. "An issue of fact is material only if its resolution could affect the outcome of the action." *DeBlanc v. St. Tammany Par. Sch. Bd.*, 640 F. App'x 308, 312 (5th Cir. 2016) (per curiam) (quoting *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003) (quoting *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408 (5th Cir. 2002) (internal quotation marks omitted))).

Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

It is axiomatic that in ruling on a motion for summary judgment "[t]he evidence of the nonmovant is to be believed[ ] and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, —— U.S. ——, ——, 134 S. Ct. 1861, 1863, 188 L. Ed. 2d 895 (2014) (per curiam) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (internal quotation marks omitted)); *see, e.g., Ard v. Rushing*, 597 F. App'x 213, 217 (5th Cir. 2014) (per curiam) (quoting *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006) (on summary judgment, " '[w]e view the evidence in the light most favorable to the non-moving party' ")). The Court " 'resolve[s] factual controversies in favor of the

nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.' " *See Thomas v. Baldwin*, 595 F. App'x 378, 378 (5th Cir. 2014) (per curiam) (quoting *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted)). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.' " *Id.* at 380 (quoting *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " *Cotton*, 134 S. Ct. at 1866 (quoting *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505); *see Stewart v. Guzman*, 555 F. App'x 425, 430 (5th Cir. 2014) (per curiam) (citing *Vaughn v. Woodforest Bank*, 665 F.3d 632, 635 (5th Cir. 2011) (In ruling on a summary judgment motion, "[w]e neither engage in credibility determinations nor weigh the evidence.")). With the foregoing standard in mind, the Court turns to the issues before it.

### III.   *Analysis and Discussion*

Plaintiff's claims against the County Defendants are explicitly asserted as official-capacity claims, that is, against Defendants Calhoun County Sheriff's Department; Dewayne Winter in his official capacity as Calhoun County Sheriff's Deputy; and Tracy McGuirt in her official capacity as Calhoun County Justice Court Clerk.   *See* Pl.'s Compl. [1] ¶¶ 68–69. However, because Plaintiff is proceeding *pro se*, the Court will liberally construe his complaint as asserting claims against the County Defendants in both their official and individual capacities.

According to the alleged facts and documentation attached to the motion papers, Mr. Clark visited the Calhoun County Sheriff's Department and advised Defendant Winter, a Calhoun County Sheriff's Deputy, that Plaintiff "had written him two bad checks." *See* Def.

Winter's Aff. [30-8] ¶ 2. Defendant Winter advised Mr. Clark "that he would have to go to the Calhoun County Justice Court to fill out affidavits against [Plaintiff]." *Id.* ¶ 3. Mr. Clark then went to Calhoun County Justice Court and informed Defendant McGuirt, the Calhoun County Justice Court Clerk, that he had received checks from Plaintiff with insufficient funds. Defendant McGuirt informed Mr. Clark that he could complete Bad Check Affidavits on those checks, assisted him in doing so, and Mr. Clark signed Bad Check Affidavits in her presence on April 25, 2008. Def. McGuirt's Aff. [30-9] ¶ 3. Defendant McGuirt maintains that it is a regular part of her job to assist with the filing of sworn affidavits. *Id.* ¶ 2.

The subject Bad Check Affidavit states that "on or about the 11th day of September, A.D. 2007[, Plaintiff] did willfully and feloniously, with intent to defraud, make, issue[,] and deliver unto NAC Farms Inc." the bad check when "he . . . had NSF funds on deposit to his credit with the said Bank of America with which to pay the same . . . and was not paid by reason of there being NSF funds in said bank . . . ." *See* Bad Check Aff. [1-1] at 1. The Bad Check Affidavit does not indicate whether the check in question was a post-dated check; the affidavit merely indicates that Plaintiff had insufficient funds in his account to cover the check. *See id.* The foundation of Plaintiff's case is that Mr. Clark "falsely swore that Plaintiff made, issued[,] and delivered the check to Mr. Clark on September 11, 2007, when in fact, on or about August 27, 2007, Plaintiff made, issued[,] and delivered the check that was post-dated for September 11, 2007." Pl.'s Compl. [1] ¶ 11.

Defendant McGuirt then entered the Bad Check Affidavit completed by Mr. Clark into the Calhoun County Justice Court system; she attests that once an affidavit is signed in her presence, it is her "usual course of business to create a warrant for the Justice Court Judge to sign." Def. McGuirt's Aff. [30-9] ¶ 4. Thus, the Calhoun County Justice Court Judge then

signed warrants for Plaintiff's arrest for "felony bad check" under Mississippi Code § 97-19-55. *See* J. Ct. Warrant [30-2] at 1. After receiving the warrants and attached Bad Check Affidavits at the Calhoun County Sheriff's Department on April 25, 2008, Sheriff's Deputy Winter interviewed Mr. Clark in connection with the charges; his attempts to reach Plaintiff were not successful, and he "requested that [Plaintiff's] information be placed on the NCIC system as a wanted person" and that information was entered on NCIC on October 16, 2008. *See* 10/16/2008 Offense/Incident Report [1-7] at 1; Def. Winter's Aff. [30-8] ¶ 4; 10/16/2008 NCIC Report [30-3] at 1. Defendant Winter attests that he was then notified by Officer Wayne Stone in Calhoun County that Plaintiff had been located in Chicago; Defendant Winter subsequently faxed a copy of the two warrants and affidavits from the Calhoun County Justice Court to the Chicago Police Department, and Plaintiff was subsequently extradited. Def. Winter's Aff. [30-8] ¶¶ 5–6. Defendant Winter attests that all of these actions were taken as part of his regular course of business as deputy sheriff for Calhoun County. *Id.* ¶ 7. Subsequently, the Governor's Warrant was issued for "Felony False Pretense (Bad Check)," *see* Request for Interstate Rendition [38] at 7; the Chicago Police Department picked up Plaintiff on October 16, 2009; and Assistant District Attorney Stallings requested extradition to Mississippi on October 27, 2009. Apparently, in order to process the extradition, Defendant McGuirt was contacted and requested to provide certified copies of the affidavits and arrest warrants and include a Justice Court Judge's and Justice Court Clerk's certificate. On May 14, 2009, Plaintiff was indicted on two counts of felony bad check by a Grand Jury. *See* Indictment [30-6] at 1–2.

Plaintiff asserts the following claims against the County Defendants collectively: malicious prosecution, false arrest and imprisonment, abuse of process, and intentional infliction of emotional distress. Plaintiff further asserts that Defendant Calhoun County Sheriff's

Department failed to properly supervise Sheriff's Deputy Dewayne Winter and "proceeded to allow him to act arbitrarily and illegally against Plaintiff as a bill collector for a debt, which had been dismissed in [the] U[nited] S[tates] Bankruptcy Court," Pl.'s Compl. [1] ¶ 24, and directly avers that Defendant Winter "[a]cted arbitrarily and illegally against Plaintiff as a bill collector for a debt, which had been dismissed in [the] U[nited] S[tates] Bankruptcy Court," id. ¶ 25. Finally, Plaintiff asserts that Mr. Clark "swore out a false affidavit as a part of the first step in initiating a criminal complaint against Plaintiff . . . in the presence of [Defendant] McGuirt"; and that Defendant McGuirt "[f]ailed to perform her duly sworn duty as Justice Court Clerk by notarizing a false affidavit illegally"; that according to Mr. Clark's testimony at a hearing in the state court proceeding, "[Defendant] McGuirt did not inform [Mr. Clark] as to the content of an affidavit that she advised him to sign, which is contrary to the duties of a Justice Court Clerk"; that "subsequent to this action, [Defendant] McGuirt "then examined and screened this same affidavit signed by Mr. Clark"; and that subsequently, "the Mississippi District Attorney's Office presented this false affidavit to the Grand Jury, which created the criminal action against Plaintiff by State of Mississippi officials named as Defendants in this complaint." Id. ¶¶ 7, 26.[5]

The County Defendants argue that Plaintiff's claims are barred due to immunity and further that certain claims are time-barred and fail on the merits.[6] For all the reasons stated below, the Court finds that the claims must be dismissed.

---

[5] Plaintiff further asserts in his response that he has brought claims against the County Defendants for a Fourth Amendment violation and a violation of the law in *Henderson v. State* (apparently, a malice in law claim). No such claims are pled in his complaint against the County Defendants. However, for the sake of thoroughness, the Court addresses these claims in the analysis and discussion section below.

[6] The Court notes that the County Defendants alleged in their answer [13] that Plaintiff failed to comply with the notice provisions of the Mississippi Tort Claims Act, Mississippi Code § 11-46-9—an argument also raised by the other Defendants in their motions to dismiss. *See* Cty. Defs.' Answer & Aff. Defenses [13] at 2, 2d Aff. Defense. However, the County Defendants do not assert this argument in their motion for summary judgment. Accordingly, the Court does not address notice under the MTCA in this opinion.

## 1. Immunity

The County Defendants first argue that they are immune from suit due to several immunity provisions in the Mississippi Tort Claims Act (the "MTCA"). The MTCA provides the exclusive remedy against a governmental entity or its employee. Miss. Code Ann. § 11-46-7(1). Thus, "[a]ny claim filed against a governmental entity and its employees (for monetary relief) must be brought under [the] statutory scheme" of the MTCA. *Stuckey v. Miss. Dep't of Trans.*, No. 3:07-cv-639-TSL-JCS, 2008 WL 1868421, at *2 (S.D. Miss. Apr. 24, 2008); *Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So. 2d 1234, 1236 (Miss. 1999). Plaintiff seeks monetary relief on all claims. Accordingly, Plaintiff's state-law claims against the County Defendants for malicious prosecution, false arrest and imprisonment, abuse of process, and intentional infliction of emotional distress are subject to the MTCA. In addition, Plaintiff's other allegations, if anything, support state-law claims that also are subject to the MTCA. *See* Pl.'s Compl. [1] ¶ 25–26.

The MTCA waives Mississippi's sovereign immunity in "claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment," Miss. Code. Ann. § 11-46-5(1), "but subjects this blanket waiver to numerous exceptions," *Phillips ex rel. Phillips v. Monroe County, Miss.*, 311 F.3d 369, 375 (5th Cir. 2002). Waiver of the state's sovereign immunity is "strictly construed in favor of the holder of the right," and the Fifth Circuit has stated that " 'the MTCA's exemptions to Mississippi's waiver should be liberally construed in favor of limiting liability.' " *Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 306 (5th Cir. 2006) (quoting *In re Foust*, 310 F.3d 849, 864 (5th Cir. 2002) (citations omitted)).

"[A]n employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations." Miss. Code Ann. § 11-46-5(2). Thus, Mississippi retains its sovereign immunity with respect to claims of malicious prosecution and malice in law. Accordingly, to the extent Plaintiff has attempted to assert claims of malicious prosecution and malice in law against the County Defendants in their official capacities, those claims are barred by Mississippi's sovereign immunity. *See Porter v. Farris*, 328 F. App'x 286, 288 (5th Cir. 2009) (per curiam); *Pardue v. Jackson County*, No. 1:14-CV-290-KS-MTP, 2016 WL 3024153, at *10 (S.D. Miss. May 25, 2016) (collecting cases).

The County Defendants argue that several bases of immunity bar the false arrest and false imprisonment, abuse of process, and intentional infliction of emotional distress claims against Defendants McGuirt and Winter in their individual capacities, specifically: individual immunity pursuant to Mississippi Code § 11-46-7(2), judicial action immunity pursuant to Mississippi Code § 11-46-9(1)(a), law enforcement immunity pursuant to Mississippi Code § 11-46-9(1)(c), discretionary-function immunity pursuant to Mississippi Code § 11-46-9(1)(d), and independent intermediary immunity pursuant to Mississippi Code § 11-46-9(1)(f).[7] The County Defendants further argue that Defendant Calhoun County Sheriff's Department is immune from suit as it is not a political division within the meaning of Mississippi Code § 11-46-1(1).

Plaintiff's response presents one argument: Defendant McGuirt is not entitled to immunity from suit, because, according to him, she had the intent to deceive and defraud. Plaintiff maintains that due to her actions, Defendants Winter and Calhoun County Sheriff's

---

[7] The Court does not address the independent intermediary immunity argument based on Mississippi Code § 11-46-9(1)(f).

Department are also subject to suit. Plaintiff states: "[R]egardless of the County Defendants' good faith intentions to follow proper procedure accordingly concerning the Plaintiff's supposed violations of Mississippi law, [the] County Defendants[] brought the credibility of their good faith intentions into question when Defendant McGuirt displayed willful deception and misrepresentation under oath during [her] sworn civil deposition relative to civil Cause No. 3:12-cv-00111-SA-SAA[,] and other County Defendants supported her in this despicable endeavor maliciously." Pl.'s Resp. Opp'n to Cty. Defs.' Mot. Summ. J. [35] at 6. Plaintiff cites to "Title 1, Secretary of State, Part 5: Business Services – Notaries Public Part 5 Chapter 5: Notary Actions," Rule 5.7, which provides that "[a] notary shall not perform any official action with the intent to deceive or defraud." Plaintiff maintains that Defendant McGuirt "manifested, both blatantly and maliciously, an intent to deceive when she misrepresented, or was otherwise deceptive about, her communications with Defendant . . . Stallings concerning matters relevant to [Plaintiff's other civil case, 3:12-cv-00111-SA-SAA, that has been dismissed on summary judgment grounds], during sworn civil deposition." *Id.* at 2. Plaintiff maintains that this "reckless" behavior "show[ing] an egregious disregard for the health and safety of the Plaintiff" was as follows: Defendant McGuirt testified in a deposition in the earlier-filed civil case when asked whether she "had any discussions regarding this affidavit with anybody, including Mr. Clark" after the affidavit was signed: "No, sir . . . I don't recall . . . Not that I recall." Def. McGuirt's Dep. Excerpt [35] at 9. Plaintiff further maintains that Defendant Stallings testified in a deposition in that same case that he had contacted Defendant McGuirt to obtain documents to complete the extradition papers on Plaintiff. Therefore, Plaintiff maintains in his response that Defendant McGuirt was dishonest in deposition testimony and that she intended to deceive Plaintiff by intentionally leaving out testimony that she had contact with Defendant Stallings to

12

start the extradition process of Plaintiff. Plaintiff further asserts in his response that "Defendant McGuirt denied her relative interactions with Defendant Stallings in her sworn deposition . . . willfully an[d] egregiously with the support of other County Defendants . . . and this collective behavior by County Defendants created a malicious prosecution scenario, which led to [Plaintiff's] subsequent false arrest[] and continuous malicious prosecution" in the state-court criminal prosecution of Plaintiff "cooperatively, by all County Defendants named herein." *Id.* at 4. Plaintiff maintains that Defendant McGuirt's alleged "willful deception and misrepresentation during sworn civil deposition was not a lawful act" and thus that the County Defendants do not qualify for immunity under Mississippi law. Plaintiff offers no evidentiary support for this argument other than his own conclusory statements.

As demonstrated below, the claims against the County Defendants are barred by several immunity provisions.

### a. Individual Immunity, Mississippi Code § 11-46-7(2)

First, the County Defendants argue that Defendants McGuirt and Winter are subject to individual immunity under Mississippi Code § 11-46-7(2), because their alleged acts were taken in the course and scope of their employment. "[N]o employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties," Miss. Code Ann. § 11-46-7(2), and there is a "rebuttable presumption" that a given act is within that scope, Miss. Code Ann. § 11-46-7(7). *See Hearn v. Bd. of Sup'rs of Hinds Cty., Miss.*, 575 F. App'x 239, 243 (5th Cir. 2014) (per curiam) (citing the aforementioned provisions). However, "an employee shall not be considered as acting within the course and scope of his employment . . . if the employee's conduct constituted [ ] malice." Miss. Code Ann. § 11-46-7(2).

The Court finds that Plaintiff has not adequately rebutted the presumption that Defendants McGuirt and Winter were acting within the course and scope of their employment when they, respectively, entered the Bad Check Affidavit in the records of Calhoun County Justice Court and took steps to arrest Plaintiff based on the indictment. Plaintiff has alleged facts showing all of the Defendants in the case had an attenuated role in the state-court criminal proceedings against Plaintiff, that the particular roles of each defendant were based on their job duties, and that the decisions to enter documents in the justice court, participate in the prosecution of Plaintiff that led to an indictment, arrest Plaintiff, and detain Plaintiff were undertaken in the course and scope of the Defendants' respective employment in various positions.

Furthermore, Plaintiff has not pled facts indicating malice on the part of the Defendants in this case. Plaintiff maintains that the subject Bad Check Affidavit sworn by Mr. Clark was false in that it did not indicate that the check was post-dated. Mississippi Code § 97-19-55(1)(a) provides in pertinent part that it is unlawful for any person "with fraudulent intent: [t]o make, draw, issue, utter, deliver, or authorize any check . . . to obtain . . . delivery of other valuable property . . . knowing at the time of making, drawing, issuing, uttering, delivering[,] or authorizing said check . . . that the maker, drawer[,] or payor has not sufficient funds in or on deposit with such bank . . . for the payment of such check . . . in full . . . ." The subject Bad Check Affidavit sworn by Mr. Clark states that "on or about the 11th day of September, A.D. 2007[, Plaintiff] did willfully and feloniously, with intent to defraud, make, issue[,] and deliver unto NAC Farms Inc." the bad check when "he . . . had NSF funds on deposit to his credit with the said Bank of America with which to pay the same . . . and was not paid by reason of there being NSF funds in said bank . . . ." *See* Bad Check Aff. [1-1] at 1. Although Plaintiff maintains

14

that Defendants were aware the Bad Check Affidavit was false, no evidence in the record supports that the Defendants knew the check in question was post-dated at the time of the events giving rise to this suit. Certainly, there are no alleged facts or evidence supporting that Defendants McGuirt and Winter acted with malice.

Plaintiff argues that Defendant McGuirt's statement in her deposition that that she did not recall having communication with any individual about the Bad Check Affidavit was made with the intent to deceive. However, Defendant McGuirt's statement does not indicate intent to deceive or any ill intent at all. Plaintiff has presented no further evidence in support of his conclusory argument. Accordingly, Defendants McGuirt and Winter are entitled to immunity based on Mississippi Code § 11-46-7(2). No further analysis of other immunity provisions is necessary. *McAllister v. DeSoto County, Miss.*, 470 F. App'x 313, 321 (5th Cir. 2012) (citing *City of Jackson v. Doe*, 68 So. 3d 1285, 1289 (Miss. 2011)). However, for the sake of thoroughness, the Court will address the County Defendants' further arguments for dismissal.

### b. Judicial Action Immunity, Mississippi Code § 11-46-9(1)(a)

The County Defendants further argue that the claims against Defendants McGuirt and Winter are barred by judicial action immunity under Mississippi Code § 11-46-9(1)(a), which provides that "[a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: . . . [a]rising out of a . . . judicial action or inaction, or administrative action or inaction of a . . . judicial nature . . . ." The County Defendants cite the case of *DeSoto County v. T.D.*, 160 So. 3d 1154 (Miss. 2015), in which an interlocutory appeal was brought before the Mississippi Supreme Court on the issue of whether a DeSoto County Justice Court Clerk's negligence in failing to cancel an arrest warrant subjected the county to a tort lawsuit. In that case, the Mississippi Supreme Court held that the justice

court clerk's act of issuing notice of a canceled warrant was "clearly an act of a 'judicial nature,'" that is, " '[o]f, relating to, or by the court or a judge.' " *Id.* at 1157 (quoting Black's Law Dictionary). Similarly, in this case, the County Defendants maintain that Defendant McGuirt's act of notarizing the Bad Check Affidavit was within her employment and an act of a judicial nature subject to immunity.

Although Plaintiff concedes that Defendant McGuirt's actions "were of a judicial nature, or otherwise, administrative acts of a judicial nature," Plaintiff argues that the acts were "indeed reckless, showed an egregious disregard for the health and safety of the Plaintiff," and were "not within the course and scope of her responsibilities as an employee of Calhoun County[,] Mississippi"; Plaintiff further argues that with the alleged actions, Defendant McGuirt "deceived and defrauded her position as an *ex officio* notary public" and violated Rule 5.7 of "Title 1: Secretary of State Part 5: Business Services – Notaries Public Part 5 Chapter 5: Notary Actions." Pl.'s Resp. Opp'n to Cty. Defs.' Mot. Summ. J. [35] at 3.

The Court finds that based on the reasoning of the *DeSoto County* case, Defendant McGuirt is immune from suit due to the fact that her notarization of the Bad Check Affidavit was an action of a judicial nature.

The County Defendants further argue that Defendant Winter was acting within his employment in an act of judicial nature and was simply following up on the Governor's Warrant. As stated, Plaintiff presents no specific argument that Defendant Winter is not entitled to immunity. The Mississippi Court of Appeals has held that police officers who enforced a judicial custody order were entitled to immunity under Mississippi Code § 11-46-9(1)(a) because "[t]he statute does not premise immunity on the employee's actual employment as a member of the judiciary" but instead "grants immunity to governmental employees whose conduct arises out

16

of a judicial action." *Blake v. Wilson*, 962 So. 2d 705, 712 (Miss. Ct. App. 2007). Similarly, here, Defendant Winter was investigating and enforcing warrants issued against Plaintiff—conduct arising out of a judicial action. Therefore, Defendant Winter is also entitled to judicial action immunity.

Accordingly, Defendants McGuirt and Winter are also entitled to immunity based on Mississippi Code § 11-46-9(1)(a).

### c. **Law Enforcement Immunity, Mississippi Code § 11-46-9(1)(c)**

Third, the County Defendants argue that the claims against Defendant Winter are barred by law enforcement immunity under Mississippi Code § 11-46-9(1)(c), which provides that sovereign immunity is not waived for "any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." Miss. Code Ann. § 11-46-9(1)(c). "' [R]eckless disregard is synonymous with willfulness and wantonness and . . . includes an element of intent to harm.' " *Cunningham ex rel. Cunningham v. City of W. Point, Miss.*, 380 F. App'x 419, 422 (5th Cir. 2010) (quoting *Foster v. Noel*, 715 So. 2d 174, 179 (Miss. 1998)). " '[R]eckless disregard' is 'a higher standard than gross negligence and embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.' " *Porter v. Farris*, 328 F. App'x 286, 288–89 (5th Cir. 2009) (per curiam) (quoting *City of Greenville v. Jones*, 925 So. 2d 106, 110 (Miss. 2006)).

The County Defendants argue that the indictment in this case established probable cause to arrest Plaintiff as a matter of law, and that any investigation and execution of the warrants against Plaintiff by Defendant Winter are insulated from suit by the law enforcement exception.

The County Defendants further argue that there is no evidence that Defendant Winter acted with reckless disregard for the safety and well-being of Plaintiff when he arrested him.

As stated, Plaintiff has made no specific argument supporting that Defendant Winter is not subject to law enforcement immunity. No alleged facts or evidence in the case support that Defendant Winter acted with reckless disregard; instead the alleged facts and evidence support that Defendant Winter investigated the warrants against Plaintiff and took steps to execute them. The fact that the charges against Plaintiff were later dropped does not indicate reckless disregard on the part of Defendant Winter. *See Cunningham*, 380 F. App'x at 423. Accordingly, the claims against Defendant Winter are also barred by law enforcement immunity under Mississippi Code § 11-46-9(1)(c).

### d. Discretionary-Function Immunity, Mississippi Code § 11-46-9(1)(d)

Fourth, the County Defendants argue that the claims against Defendant Winter are barred by discretionary-function immunity under Mississippi Code § 11-46-9(1)(d). The MTCA affords immunity to governmental entities and their employees "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." Miss. Code Ann. § 11-46-9(1)(d). "Immunity attaches to discretionary functions (requiring judgment or discretion) but not to ministerial functions (imposed by statute, regulation, or other binding directive)." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 444 (5th Cir. 2015) (citing *Brantley v. City of Horn Lake*, 152 So. 3d 1106, 1113–1115 (Miss. 2014) (en banc); *Harris ex rel. Harris v. McCray*, 867 So. 2d 188, 191 (Miss. 2003) (en banc)). "In general, 'acts performed in furtherance of a discretionary function or duty are themselves entitled to immunity.'" *Id.* (quoting *Brantley*, 152 So. 3d at 1113).

The County Defendants argue that Defendant Winter's actions, which involved investigating and taking actions to execute warrants against Plaintiff based on an indictment, are discretionary in nature, and thus, that Defendant Winter is shielded by discretionary immunity. The Court finds that this argument is well taken. As a matter of law, investigative measures taken by Defendant Winter in connection with the warrants were discretionary in function. *See Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 444 (5th Cir. 2015); *Estate of Carr ex rel. Macfield v. City of Ruleville*, 5 So. 3d 455, 458 (Miss. Ct. App. 2008).

As stated, Plaintiff makes no specific argument that Defendant Winter is not entitled to immunity. However, he argues that Defendant McGuirt's alleged misstatement in her deposition was an act outside of her discretionary authority that "forfeited [the County Defendants' right to immunity." Pl.'s Resp. Opp'n to Cty. Defs.' Mot. Summ. J. [35] at 6. This argument is not well taken, as it does not at all address discretionary-function immunity, nor is it supported by any evidence. Accordingly, the Court finds that the claims against Defendant Winter are further barred by discretionary-function immunity under Mississippi Code § 11-46-9(1)(d).

### e. Political Subdivision, Mississippi Code § 11-46-1(1)

Finally, the County Defendants argue that Defendant Calhoun County Sheriff's Department is immune from suit because it is not a political subdivision within the meaning of the MTCA, Mississippi Code § 11-46-1(1). The County Defendants cite in support *Brown v. Thompson*, 927 So. 2d 733, 737 (Miss. 2006), wherein the Mississippi Supreme Court held that sheriff's departments are not political subdivisions within the meaning of the MTCA. Thus, the County Defendants argue, the Calhoun County Sheriff's Department does not enjoy a separate legal existence apart from Calhoun County. The County Defendants maintain that all claims

against Defendant Calhoun County Sheriff's Department should be dismissed for failure to name a political subdivision defendant.

Plaintiff has provided no argument to the contrary, nor has he provided any argument to support his claims against Defendant Calhoun County Sheriff's Department. The Court finds that Defendant Calhoun County Sheriff's Department may not be sued, as it is not a political subdivision subject to suit under the MTCA. Under Mississippi law, the proper governmental entity to name as defendant in this suit is Calhoun County, not the Calhoun County Sheriff's Department. *See Hearn*, 575 F. App'x at 243 (citing *Brown*, 927 So. 2d at 738). The Court further finds that the allegations against Defendant Calhoun County Sheriff's Department are conclusory and unsupported by evidence and thus fail on that basis, as well.

For all of the foregoing reasons, the County Defendants are immune from suit under the MTCA. However, for the sake of thoroughness, the Court will examine the County Defendants' arguments that the claims must also be dismissed on statute of limitations grounds, as well as on the merits.

## 2. Statute of Limitations

Next, the County Defendants argue that Plaintiff's state-law claims against the County Defendants are barred by the applicable statutes of limitations.

The County Defendants maintain that the false arrest/false imprisonment claim accrued in 2008; the abuse of process claim accrued on April 28, 2008; and the intentional infliction of emotional distress claim accrued in 2008. *See* Cty. Defs.' Mem. Br. Supp. Mot. Summ. J. [29] at 5–6. Thus, the County Defendants argue that the false arrest/false imprisonment, abuse of process, and intentional infliction of emotional distress claims are barred by the one-year statute of limitations. However, Plaintiff argues that all his claims accrued on January 6, 2015, the date

the last charge against Plaintiff was dismissed in state court. *See* Pl.'s Resp. Opp'n to Cty. Defs.' Mot Summ. J. [38] at 4.

The Court finds as follows. The state-law tort claims against the County Defendants are subject to the MTCA's one-year statute of limitations. *See* Miss. Code Ann. § 11–46–11(3)(a) ("All actions brought under this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based . . . ."). The accrual for false arrest/false imprisonment, abuse of process, and intentional infliction of emotional distress are as follows.

### a. False Arrest/False Imprisonment

A claim of false arrest/false imprisonment accrues on the day of arrest. *City of Mound Bayou v. Johnson*, 562 So. 2d 1212, 1217–1218 (Miss. 1990). It is undisputed that Plaintiff was arrested in 2008. Plaintiff filed this lawsuit on January 5, 2016—approximately eight years after the cause of action accrued. Therefore, his state-law false arrest/false imprisonment claim is barred by the applicable one-year statute of limitations.

### b. Abuse of Process and Intentional Infliction of Emotional Distress

A claim for abuse of process "accrues at the termination of the acts which constitute the abuse complained of, and not from the completion of the action which the process issued . . . ." *Delaney v. Miss. Dep't of Pub. Safety*, No. 3:12cv229-TSL-MTP, 2013 WL 286365, at *9 (S.D. Miss. Jan. 24, 2013), *aff'd*, 554 F. App'x 279 (5th Cir. 2014) (citations and internal marks omitted). Additionally, a claim for intentional infliction of emotional distress accrues on the date upon which the intentional acts forming the basis of the claim occurred. *Citifinancial Mortg. Co. v. Washington*, 967 So. 2d 16, 19 (Miss. 2007). In support of these claims, Plaintiff alleges that Defendants collectively "aid[ed] and guid[ed] Mr. Clark[] in filing a false Bad Check Affidavit

in the Justice Court of Calhoun County, Mississippi" in order to "collect a civil debt from Plaintiff." Pl.'s Compl. [1] ¶¶ 43, 44, 47. The alleged act of aiding the filing of the Bad Check Affidavit occurred on or before April 25, 2008, the date the Bad Check Affidavit was filed. Because Plaintiff filed this lawsuit on January 5, 2016—almost eight years after the cause of action accrued—his claims for abuse of process and intentional infliction of emotional distress are clearly barred by the applicable one-year statute of limitations.

Therefore, based on the foregoing, Plaintiff's claims for false arrest/false imprisonment, abuse of process, and intentional infliction of emotional distress must also be dismissed, because they are barred by the statute of limitations.

### 3. Merits

Finally, the County Defendants argue that the abuse of process, intentional infliction of emotional distress, false arrest/false imprisonment, malicious prosecution, and malice in law claims additionally fail on the merits. The Court finds this argument to be well taken for the reasons stated below.

### a. **Abuse of Process**

First, the County Defendants argue that Plaintiff's abuse of process claim fails on the merits. To demonstrate abuse of process, a plaintiff must show the following: (1) that the defendant made an illegal and improper perverted use of the process that was neither warranted nor authorized by the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process; and (3) that damage resulted to the plaintiff from the irregularity. *Williamson ex rel. Williamson v. Keith*, 786 So. 2d 390, 394 (Miss. 2001). An action for abuse of process differs from an action for malicious prosecution in that the latter is concerned with maliciously causing process to issue, but the former is concerned

with the improper use of process after it has been issued. *Shamburger v. Grand Casino of Miss., Inc./Biloxi*, 84 F. Supp. 2d 794, 802 (S.D. Miss. 1998) (citing *Moon v. Condere Corp.*, 690 So. 2d 1191, 1197 (Miss. 1997)). "Abuse of process is an intentional tort and requires a showing of bad faith." *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 191 (Miss. 1989).

Plaintiff alleges that the Defendants "misused the criminal law and made an illegal use of the legal process of the State of Mississippi" by aiding and guiding Mr. Clark to file the Bad Check Affidavit, and that Defendants' ulterior motive in the same was "to collect a civil debt from Plaintiff." Pl.'s Compl. [1] ¶ 43–44.

The County Defendants argue that the abuse of process claim fails on its merits, because there is no evidence of bad faith or of malice in the County Defendants' reliance on the Bad Check Affidavit to commence prosecution of Plaintiff. The County Defendants further argue that Mr. Clark had returned checks that did not appear to the County Defendants to be post-dated. Further, the County Defendants maintain that the Bad Check Affidavits, including the notary by Defendant McGuirt, as Calhoun County Justice Court Clerk, appear valid in all material respects. Finally, the County Defendants argue that a legitimate purpose for the County Defendants' assistance in prosecuting the state-court criminal prosecution of Plaintiff is provided by affidavit. Therefore, the County Defendants maintain that no genuine dispute of material fact exists as to the abuse of process claim that would preclude summary judgment and warrant trial.

The Court finds the County Defendants' arguments to be well taken. Plaintiff presents no evidence that either the execution of the warrants by Defendant Winter or the entry of the Bad Checks Affidavit by Defendant McGuirt was an illegal and perverted use of the process that was neither warranted nor authorized. Instead, the evidence in the record undisputedly supports that Defendant Winter effectuated the arrest as part of his duties as a sheriff's deputy and that

Defendant McGuirt entered the documents in the justice court system as a part of her duties as justice court clerk. Although Plaintiff has argued that Defendant McGuirt had a dishonest and ulterior motive in allegedly misstating in her deposition in the other civil action that she had not spoken to Defendant Stallings when she actually had, the only evidence Plaintiff presents in support of this argument is the actual deposition testimony—which alone does not support any such ulterior motive or purpose. Plaintiff also has not presented any evidence that any Defendants in the case *sub judice* engaged in any bad faith actions after process was issued. Because Plaintiff has only provided conclusory allegations and argument pertaining to his abuse of process claim that are not supported by any evidence, no genuine dispute of material fact remains as to this claim. Therefore, the abuse of process claim is properly dismissed on the merits.

### b. Intentional Infliction of Emotional Distress

The County Defendants further argue that Plaintiff's intentional infliction of emotional distress claim fails on the merits. To demonstrate intentional infliction of emotional distress, a plaintiff must satisfy a very high standard and demonstrate that the defendant's conduct was extreme and outrageous, going beyond all possible bounds of decency. *See Brown v. Inter-City Fed. Bank for Sav.*, 738 So. 2d 262, 264 (Miss. Ct. App. 1999). Liability does not extend to "mere insults, indignities, threats, annoyances, or petty oppressions." *Raiola v. Chevron U.S.A. Inc.*, 872 So. 2d 79, 85 (Miss. Ct. App. 2004).

Plaintiff alleges that Defendants demonstrated "extreme and outrageous conduct" in aiding and guiding Mr. Clark to file the Bad Check Affidavit against Plaintiff; that such conduct was "intentional, reckless[,] and blatantly malicious"; and that it was foreseeable that such

actions would result in Plaintiff's arrest, incarceration, and allegedly unlawful indictment. Pl.'s Compl. [1] ¶¶ 47–48.

The County Defendants argue that the intentional infliction of emotional distress claim fails, because Mr. Clark presented returned checks that gave no indication of being post-dated and further that the Bad Check Affidavits, including the notary by Calhoun County Justice Court Clerk McGuirt, appear valid in all material particulars and that a legitimate purpose for the County Defendants' assistance in the state-court criminal prosecution of Plaintiff is provided by affidavit. Further, the County Defendants argue that evidence was presented to Defendant McGuirt of returned checks, and thus, that her conduct in aiding Mr. Clark in completing the Bad Check Affidavits was not extreme, outrageous, or beyond all bounds of decency. Therefore, the County Defendants argue that no genuine dispute of material fact exists on the intentional infliction of emotional distress claim that would preclude summary judgment and warrant trial.

The Court finds that the County Defendants' arguments are well taken. Plaintiff's conclusory allegations that Defendants acted outrageously do not support an intentional infliction of emotional distress claim. He has not pled facts or presented evidence supporting that Defendants' actions were outrageous. Accordingly, this claim is also properly dismissed on the merits.

### c. False Arrest/False Imprisonment

The County Defendants further argue that Plaintiff's false arrest/false imprisonment claim fails on the merits. To sustain a claim for false arrest/false imprisonment under Mississippi law, a plaintiff must satisfy two elements: (1) the detention of a person and (2) the unlawfulness of the detention. *See, e.g.*, *Powell v. Moore*, 174 So. 2d 352, 354 (Miss. 1965).

Plaintiff alleges that Defendants "failed to use reasonable care" and "due diligence" in aiding and guiding Mr. Clark in filing the Bad Check Affidavit, Pl.'s Compl. [1] ¶¶ 38, 40, and that Defendants "failed to exercise reasonable diligence to make inquiry and investigation of the facts touching on the probable guilt of Plaintiff, *id.* ¶ 39. Plaintiff maintains that he should not have been arrested on this charge because he had given Mr. Clark a post-dated check. However, at most he has presented some allegations that may support negligence against the Defendants. He has not presented facts showing that he was arrested or imprisoned unlawfully.

The County Defendants argue that the false arrest/false imprisonment claim must be dismissed, because the warrants for Plaintiff's arrest would not have been signed without demonstrated probable cause and that Mr. Clark presented evidence of two returned checks upon signing the Bad Check Affidavit. The County Defendants further argue that Mr. Clark presented returned checks that gave no indication of being post-dated and further that the Bad Check Affidavits, including the notary by Calhoun County Justice Court Clerk McGuirt, appear valid in all material particulars and that a legitimate purpose for the County Defendants' assistance in the state-court criminal prosecution of Plaintiff is provided by affidavit. Therefore, the County Defendants argue that no genuine dispute of material fact exists on the false arrest/false imprisonment claim that would preclude summary judgment and warrant trial.

The Court finds these arguments to be well taken. Even if the information contained in the subject Bad Check Affidavit was false, Plaintiff has failed to show that the County Defendants had any knowledge of its falsity and unlawfully detained him. Therefore the false arrest/false imprisonment claim must also be dismissed on the merits.

### d. **Malicious Prosecution and Malice in Law**

Finally, the County Defendants further argue that Plaintiff's malicious prosecution claim must be dismissed on the merits, because Plaintiff fails to allege malice on the part of the County Defendants. The Court finds this argument to be well taken and that it also applies to the extent Plaintiff has asserted a malice in law claim against the County Defendants.

To establish a claim for malicious prosecution under Mississippi law, a plaintiff must demonstrate: (1) the institution of civil or criminal proceedings by the defendant, (2) termination of the proceedings in the plaintiff's favor, (3) malice in instituting the proceedings, (4) want of probable cause, and (5) damages. *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 693 (5th Cir. 2010). "Malice in law is not necessarily personal hate or ill will, but it is 'the intent, without justification or excuse, to commit a wrongful act.' " *Harmon v. Regions Bank*, 961 So. 2d 693, 699 (Miss. 2007) (quoting Black's Law Dictionary 976 (8th ed. 2004)). "Malice, in its legal sense, means a wrongful act done intentionally, without just cause or excuse." *Id.* (citing *Memphis Steam Laundry–Cleaners, Inc. v. Lindsey*, 5 So. 2d 227, 231 (Miss. 1941)).

Plaintiff alleges that criminal proceedings were instituted against him by all Defendants in this case and that the same were terminated in Plaintiff's favor. *See* Pl.'s Compl. [1] ¶¶ 26–27, 29, 30, 35. Plaintiff further alleges that Defendants acted with malice in initiating the prosecution against him and that such malice can be inferred because "the criminal prosecution was instituted primarily to collect a civil debt" and because the facts viewed objectively at the time of the incident "would not have led a reasonable person to believe that Plaintiff was guilty of the crime charged, since his post-dated check is not a prosecutable offense under Mississippi law." *Id.* ¶¶ 32–34. Plaintiff alleges that as a result he has suffered compensatory and incidental damages. *Id.* ¶ 36.

The County Defendants argue that the malicious prosecution claim must be dismissed, because Mr. Clark presented returned checks that gave no indication of being post-dated and further that the Bad Check Affidavits, including the notary by Calhoun County Justice Court Clerk McGuirt, appear valid in all material particulars and that a legitimate purpose for the County Defendants' assistance in the state-court criminal prosecution of Plaintiff is provided by affidavit. Therefore, the County Defendants argue that no genuine dispute of material fact exists as to the malicious prosecution claim that would preclude summary judgment and warrant trial.

Plaintiff argues in his response that "Defendant McGuirt denied her relative interactions with Defendant Stallings in her sworn deposition . . . willfully an[d] egregiously with the support of other County Defendants . . . and this collective behavior by County Defendants created a malicious prosecution scenario, which led to [Plaintiff's] subsequent false arrest[] and continuous malicious prosecution" in the state-court criminal prosecution of Plaintiff "cooperatively, by all County Defendants named herein." Pl.'s Resp. Opp'n to Cty. Defs.' Mot. Summ. J. [35] at 4.

The Court finds that even if Plaintiff can satisfy the first two elements of his claim—the institution of criminal proceedings by Defendants and termination of the proceedings in Plaintiff's favor—he cannot satisfy the other elements of his claim. Although he has argued his arrest and subsequent imprisonment were improper and were brought about "with the aid and guidance of Defendants named in [his] complaint," Pl.'s Compl. [1] ¶ 10, he has presented no evidence of malice in instituting the proceedings by any of the Defendants. Further, he was charged with felony bad check under Mississippi Code § 97-19-55(1)(a), which provides in pertinent part that it is unlawful for any person "with fraudulent intent: [t]o make, draw, issue, utter, deliver, or authorize any check . . . to obtain . . . delivery of other valuable property . . .

knowing at the time of making, drawing, issuing, uttering, delivering[,] or authorizing said check

. . . that the maker, drawer[,] or payor has not sufficient funds in or on deposit with such bank . . .

for the payment of such check . . . in full . . . ." The subject Bad Check Affidavit sworn by Mr.

Clark states that "on or about the 11th day of September, A.D. 2007[, Plaintiff] did willfully and

feloniously, with intent to defraud, make, issue[,] and deliver unto NAC Farms Inc." the bad

check when "he . . . had NSF funds on deposit to his credit with the said Bank of America with

which to pay the same . . . and was not paid by reason of there being NSF funds in said bank . . .

." *See* Bad Check Aff. [1-1] at 1. The Bad Check Affidavit signed by Mr. Clark tracks the

statutory language for felony bad check. There is no evidence to suggest malice on the part of

any of the Defendants in this case. Therefore, any claims asserted against the County

Defendants for malicious prosecution and malice in law fail on their merits, because Plaintiff has

not alleged facts demonstrating that any of the Defendants acted with malicious conduct or

intentionally wrongfully against him, without just cause or excuse.

If the primary purpose of the prosecution was to collect a civil debt, the mechanism by

which it was sought to be collected—the filing of Bad Check affidavits in justice court—was not

fraught with malice. Nor was the alleged fact that the post-dated check was not a prosecutable

offense, as that is arguable, and the record does not support that the affidavit stated that the check

was post-dated. Accordingly, Plaintiff's malicious prosecution claim and malice in law claims

fail on their merits as to each Defendant in the case *sub judice*, including the County Defendants.

### e. **Other Matters**

Finally, the Court addresses two arguments made by the Plaintiff.

First, Plaintiff cites *Kalina v. Fletcher*, 522 U.S. 118, 118 S. Ct. 502, 139 L. Ed. 2d 471

(1997), wherein the United States Supreme Court held that a state prosecutor, though absolutely

29

immune from suit under 42 U.S.C. § 1983 challenging her conduct in connection with preparing and filing charging documents, including an information and motion for arrest warrant, could nonetheless be sued under Section 1983 with respect to her actions in executing certification for determination of probable cause, an act that was not one of the traditional functions of an advocate and could be made by any competent witness. The Court finds that *Kalina* does not apply to these state-law claims asserted against the County Defendants, and further, even if it did, would not change the result since the acts complained of are traditional functions of justice court clerks and sheriff's deputies. Accordingly, this argument, although legally interesting, is not well taken.

Furthermore, to the extent Plaintiff attempts to allege a Fourth Amendment claim against the County Defendants in his response—which he did not do in his complaint—the same is dismissed, as the alleged acts of all Defendants in the case do not rise to the level of a constitutional violation, nor has Plaintiff alleged any causal connection between the alleged conduct and any constitutional violation committed by a subordinate.

## IV. *Conclusion*

In sum, the motion for summary judgment [28 & 30] jointly filed by Defendants Calhoun County Sheriff's Department, Dewayne Winter, and Tracy McGuirt shall be GRANTED; and Plaintiff's claims against the County Defendants shall be DISMISSED WITHOUT PREJUDICE. *See Moawad v. Childs*, 673 F.2d 850, 851 (5th Cir. 1982). This case shall be CLOSED.

An order in accordance with this opinion shall issue this day.

THIS, the ___ day of February, 2017.

_____
SENIOR U.S. DISTRICT JUDGE

30